DECISION. *Page 2 
{¶ 1} This is an odd case of a mother intentionally infecting her child.
 {¶ 2} Defendant-appellant Shanta Irving was indicted on two counts of endangering children[1] (Counts 1 and 2) and one count of felonious assault[2] (Count 3) for contaminating her son's central bloodline with human waste. Irving pleaded guilty to endangering children, a second-degree felony, and in exchange for her guilty plea, Counts 1 and 3 were dismissed.[3] The trial court sentenced Irving to five years' incarceration. She now appeals that sentence. We affirm.
 I. A Grave Endangerment {¶ 3} In October 2005, Irving requested that her 17-month-old son, Robert Craig, be transferred from Detroit, Michigan, to Cincinnati Children's Hospital to be evaluated for a small bowel/liver transplant. Robert's short life had been riddled with medical hardship. He had already undergone five major abdominal surgeries, had been prescribed numerous medications, and was malnourished. Robert had also become comatose three times and had experienced significant developmental delays. Robert's condition was truly horrendous.
 {¶ 4} Irving was a college-educated mother who had worked as a medical journalist in Detroit. Consequently, she was very familiar with Robert's condition and the care that it required. As Robert's health continued to deteriorate, Irving had made various media appearances pleading for funding to help offset Robert's medical bills.
 {¶ 5} When Robert arrived in Cincinnati, the staff at Cincinnati Children's Hospital became suspicious of Irving. They noted that the types of bacterial infections that Robert had been contracting were rare and their frequency was unusual. *Page 3 
 {¶ 6} In October 2005, a hidden camera recorded Irving contaminating Robert's central line with fecal matter. The central line, which goes directly to the heart, must be kept sterile to reduce the risk of infection. In Robert's victim-impact statement, Dr. Daniel Lindberg recounted that a bacterial infection in the central bloodstream, called "sepsis," can be "more deadly than a gunshot wound to an arm or leg, more deadly than a car accident, [and] in some cases more deadly than a heart attack." Irving was arrested, and Robert dramatically recovered.
 {¶ 7} Irving now appeals her five-year sentence, arguing that community control was appropriate in lieu of incarceration because her actions were attributable to mental illness. She argues that offenders that are clearly and substantially impaired by mental illness should be considered for community control notwithstanding the offender's competence to stand trial. She suggests that the extent of her mental illness is most readily apparent by her reaction to the sentence, as reflected in the following exchange among Irving, the trial court, and Dr. Sherry Baker, who testified at the hearing concerning Irving's mental health.
 {¶ 8} "THE COURT: I am imposing five years in the Department of Corrections and costs of this action. Anything else?
 {¶ 9} "THE DEFENDANT: Are you serious? Your Honor, can I please talk to my family? Your Honor, can I talk with my family?
 {¶ 10} "DR BAKER: Suicide watch.
 {¶ 11} "THE COURT: On the mittimus can you mark suicide watch.
 {¶ 12} "THE DEFENDANT: This can't be real. This can't be real.
 {¶ 13} "DR BAKER: She needs her medications too."
 {¶ 14} Irving, in her appellate brief, asserts that the above colloquy shows that her mental health was so impaired that she thought that "her conduct was not disfunctional [sic] at all." And she insists that, despite extensive testimony to the contrary, she was impaired at the time she committed the offense. *Page 4 
 II. Testimony to the Contrary {¶ 15} Before sentencing, the trial court reviewed the victim-impact statement and heard from Irving, Dr. Baker, and Dr. Lindberg.
 {¶ 16} Dr. Baker provided the court with a diagnosis and description of Irving's mental issues that included depression, bipolar disorder with psychotic features, schizoaffective disorder, borderline personality disorder, bulimia, and anorexia nervosa. Dr. Baker testified that Robert's father had told her that Irving had never previously exhibited signs of a mental illness, and that he believed Irving's mental-illness defense was self-serving and had been manufactured to avoid the consequences of her actions. Dr. Baker described Irving as intelligent and manipulative. She concluded that Irving was competent to stand trial, and that despite her various mental-health issues, Irving did not meet the minimum criteria to qualify for a not-guilty-by-reason-of-insanity defense.
 {¶ 17} On appeal, Irving argues that she was "so overcome by her compelling obsession to seek attention as the attentive mother of a very sick child that she orchestrated the condition that caused the child to be critically ill in the first place." The record supports her assertion — Irving, in her plight, a would-be Margarete (Gretchen) to thisFaustian tragedy.[4] But in this instance, the child survived. And the dissimilarities do not end there: in Faust, Gretchen's prison sentence was pardoned and excused despite her wrongdoing. But we decline to extend that same leniency to Irving.
 {¶ 18} Dr. Lindberg testified that Irving suffered from Munchausen Syndrome by Proxy ("MSP"). Caregivers with MSP derive gratification from causing symptoms in another person under their care.[5] The caregiver is usually the mother, and the victim, her child.[6] Lindberg testified that MSP is a mental illness, but it is not an illness where the caregiver does not understand her actions are wrong, or where the caregiver is unable to *Page 5 
stop the abusive activity. Lindberg also testified that the motivation behind Irving's abuse was self-serving and for her own gratification.
 {¶ 19} Irving was able to stop the abuse, but she didn't. The record showed that this was a premeditated scheme Irving both orchestrated and carried out to appease her need for attention.
 {¶ 20} The record is replete with evidence showing that Irving's actions were intricately plotted and contrived, and we are unsympathetic to the assertion that her mental illness was sufficient to annul her sentence. Obviously, Irving has mental problems, but not to a degree negating criminal liability.
 {¶ 21} We hold that the trial court did not abuse its discretion in imposing a five-year sentence on Irving for endangering children. Accordingly, we affirm the trial court's judgment .
Judgment affirmed. HILDEBRANDT and HENDON, JJ., concur.
[1] See R.C. 2919.22(A) and (B)(1).
[2] See R.C. 2903.11(A)(1).
[3] See R.C. 2919.22(B)(1) and 2919.22(E)(2)(d).
[4] Johann Wolfgang von Goethe, Faust.
[5]http://www.webmd.com/mental-health/tc/Munchausen-Syndrome-by-Proxy-Topic-Overview
[6] Id. *Page 1